**HARRIS et al. v. STATE ex rel. MOTHERSEAD, Bank Com'r.**

No. 17801—Opinion Filed March 29, 1927.

(Syllabus.)

1. **Banks and Banking—Real Estate of Failed Bank in Hands of Bank Commissioner not "Public Lands of State."**
Real estate belonging to a failed state bank and being administered by the state through the State Bank Commissioner for the benefit of the depositors and stockholders thereof does not constitute "public lands of the state."

2. **Same—Power of Bank Commissioner to Execute Conveyance.**
When real estate comes into the hands of the State Bank Commissioner as property and assets of an insolvent state bank and the district court makes proper orders for the sale and disposal of such land as provided by. statute, such Bank Commissioner has full authority and power to transfer title to the purchaser by deed of conveyance.

Error from District Court, Muskogee County; E. A. Summers, Judge.

Action by the State on relation of O. B. Mothersead, State Bank Commissioner, against Robert Harris and James G. Harris. Judgment for plaintiff, and defendants bring error. Affirmed.

C. F. Gordon, for plaintiffs in error.

Clarence J. Mull. for defendant in error.

LESTER, J. This case arose in the district court of Muskogee county.

The parties appear here in the inverse order to that in the district court.

The agreed facts of record show that the Central State Bank of Muskogee, Okla., was closed by order of the State Bank Commissioner on the 18th day of August, 1922. That previous to the closing of said bank it purported to have title and was the owner of the following described property: S. E. ¼ of the N. E. ¼ and the N. ½ of the N. E. ¼ of the S. E. ¼ of sec. 12, twp. 13 north, range 18 east, and lots 1 and 2 of sec. 7, and the E. ½ of the N. W. ¼ and the W. ½ of the N. E. ¼ of section 7, township 13 north, range 19 east, and the S. E. ¼ of the S. W. ¼ and the S. W. ¼ of the S. W. ¼ of the S. E. ¼ of section 6, township 13 north, range 19 east, all in Muskogee county. state of Oklahoma.

That subsequent to the closing of said bank. to wit, on or about the 4th day of May, 1926. the State Bank Commissioner attempt-

ed to convey and transfer the title to the above-described property to these plaintiffs in error, under order of the district court in and for Muskogee county, state of Oklahoma.

The plaintiffs in error refused to accept title to same; whereupon the defendant in error brought suit in the district court of Muskogee county for specific performance of a contract by the terms of which the defendant in error was to convey by deed, under order of the district court of Muskogee county, the property above described, in consideration for which the plaintiffs in error were to pay the sum of $8,500 to the defendant in error.

Upon trial, the court held that the conveyance by deed from the defendant in error to the plaintiffs in error was in all matters and ways legal and binding, and gave a judgment against the plaintiffs in error for the sum of $8,500, the agreed purchase price of said property, to which decision the plaintiffs in error objected and duly excepted to the judgment of the court and prosecute this appeal to reverse the same.

For grounds of error it is urged:

First. That the decision of the trial court is not according to law.

Second. That the decision of the trial court is not sustained by sufficient evidence.

However, the second alleged error of the court is practically abandoned by the plaintiffs in error, and in their brief and argument they say:

"The only contention in this case and the reason for the appeal from the decision of the trial court to this honorable court is that the Supreme Court of the state of Oklahoma has not construed the statute as to whether or not the Bank Commissioner of the state of Oklahoma has the power and authority to execute a deed transferring real property coming into his hands which constituted a portion of the assets of a failed bank, closed upon order of the State Bank Commissioner, and by such deed transfer merchantable title."

The plaintiffs in error quote a portion of section 9334 of the 1926 Supplement to the Compiled Laws of 1921, which, in part, reads as follows:

"The Commissioners of the Land Office are hereby authorized and empowered to bring or defend suits brought in the name of and in behalf of the state of Oklahoma in all matters affecting the public lands of the state, and in all matters affecting the loans, investing or collecting of school land and state land moneys, of, and belonging to the state. * * *"

The plaintiffs in error raise the query as to whether the last-quoted language is controlling, or section 4166 of the Supplement to the Compiled Laws of 1921 is to be applied to the sale of real estate such as here involved.

Part of the latter section reads as follows:

"The commissioner shall collect all debts due and claims belonging to it, and upon the order of the district court of the county in which it is doing business may sell or compound all bad or doubtful debts, and on like order may sell all its real and personal property on such terms and at public or private sale, as the court may direct and shall enforce the liabilities of stockholders of such bank. * * *"

Section 1, article 14, of the Constitution of Oklahoma provides:

"General laws shall be enacted by the Legislature providing for the creation of a Banking Department, to be under the control of a Bank Commissioner, who shall be appointed by the Governor for a term of four years, by and with the consent of the Senate, with sufficient power and authority to regulate and control all state banks, loan, trust and guaranty companies, under laws which shall provide for the protection of depositors and individual stockholders."

The above constitutional provision simply requires and authorizes the Legislature to do the things mentioned in said constitutional provision.

Section 9334 of the Supplement to the Compiled Laws of 1921 relates to a class of property wholly foreign to the class of real estate in the hands of the Bank Commissioner for the purpose of administering thereon for the benefit of the depositors and individual stockholders of an insolvent bank. The latter property is simply held by the state through its agencies solely for the benefit of the depositors and stockholders of an insolvent bank.

Sovereign ownership is not contemplated under statutes of our state to such real estate; the state only acquires an interest to the extent of its trust relationship in said property. It has made the Bank Commissioner the agency through whom such property may be disposed of for the benefit of the creditors and depositors of such failed bank.

Public lands of the state have a fixed and definite status. No one could contend with any degree of reason that the proceeds from the sale of the public lands of the state could be used to discharge the obligations

of a privately owned state bank. Contrariwise, no one would contend that the real property of such state bank could be taken by the state, and become public lands of the state.

Section 4165, C. O. S. 1921, provides:

"Whenever any bank or trust company organized or existing under the laws of this state shall voluntarily place itself in the hands of the Bank Commissioner, or whenever any judgment shall be rendered by a court of competent jurisdiction, adjudging and decreeing that such bank or trust company is insolvent, or whenever its rights or franchise to conduct a banking business under the laws of this state shall have been adjudged to be forfeited, or whenever the Bank Commissioner shall become satisfied of the insolvency of any such bank or trust company, he may. after due examination of its affairs, take possession of said bank or trust company and its assets, and proceed to wind up its affairs and enforce the liability of the stockholders, officers, and directors."

Section 4167, C. O. S. 1921, provides:

"The Bank Commissioner shall take possession of the books, records, and assets of every kind or description of such bank or trust company, collect debts, dues, and claims belonging to it, and upon order of the district court, or judge thereof, may sell or compound all bad or doubtful debts, and on like order may sell all the real or personal property of such bank or trust company upon such terms as the court or judge thereof may direct, and may, if necessary, pay the debts of such bank or trust company, and enforce the liabilities of the stockholders, officers and directors: provided, however, that bad or doubtful debts as used in this section shall not include the liability of stockholders, officers. or directors."

Section 2, chapter 80, Special Session Laws, 1924. provides:

"* * * Upon taking possession of the property and business of such bank the commissioner is authorized to collect money due it and to do such other acts as are necessary to conserve its assets and business and shall proceed to liquidate the affairs thereof, as hereinafter provided. The commissioner shall collect all the debts due and claims belonging to it, and, upon the order of the district court of the county in which it is doing business, may sell or compound all bad or doubtful debts, and on like order, may sell all its real and personal property on such terms and at public or private sale, as the court shall direct. * * *"

Section 7, Special Session Laws. 1924, chapter 80, page 97, provides:

"* * * The state of Oklahoma, on relation of the Bank Commissioner. shall be deemed

to be the owner of all the assets of failed banks in his hands for the use and benefit of the depositors and creditors of said bank. * * *"

Section 8, Special Session Laws, 1924, chapter 80, page 97, provides:

"None of the assets of any such failed bank shall be sold, or bad and doubtful debts compounded by the Bank Commissioner, except on the order of the district court, and the failed bank must be notified of the hearing on any such application before any such district court or a judge thereof for at least five (5) days prior to such hearing. Such notice may be served by any person and a service be made on the persons designated by law to receive service on a banking corporation."

Each of these various sections was in full force and effect at the time the Central State Bank of Muskogee become insolvent.

It is conceded by the plaintiffs in error that all the necessary steps had been taken by the Bank Commissioner in the process of passing title as required by the statutes to the real estate here involved. It is simply the right, power, and authority of the Bank Commissioner to convey by deed the said real estate that is questioned and challenged by the plaintiffs in error.

In the case of State ex rel. Short, Attorney General, v. Norman, Judge, 86 Okla. 36. 206 Pac. 522, this court, in speaking of the power of the Bank Commissioner under the provision of section 302, Rev. Laws 1910, which section is carried into C. O. S. 1921, being section 4165 thereof, said:

"The Bank Commissioner shall take possession of the books, records, and assets of such bank, collect debts, dues, and claims belonging to it, and proceed to wind up its affairs and enforce the personal liability of the stockholders, officers, and directors. These are very broad and comprehensive directions. and, unless they are limited by some other provision of the banking law, they empower the Bank Commissioner to do everything necessary to wind up the affairs of an insolvent bank, including the sale of the assets and the distribution of the proceeds among the creditors. The term 'wind up', when construed in connection with the context of the section in which it is found and in connection with the broad terms of section 304, supra, undoubtedly embraces the entire process of settling the accounts and liquidating the assets of failed banks for the purpose of making distribution and dissolving the corporation."

Under statutes of this state, the Bank Commissioner, when administering the affairs of an insolvent bank. is clearly clothed

with authority to collect the debts due such bank. He may convert the personal and real property into cash, under the orders of the court as provided by statute. for the benefit of the depositors and stockholders of such bank. In the conveyance and d s-posal of real estate we find no specific authority which authorizes the Bank Commissioner to sign the deed to such real estate, yet this power and authority is clearly imp'ied. The property of the bank is held in trust by the state. The Bank Commissioner is the agency through whom the state acts in disposing of the assets of such failed bank, and when it is deemed to the best interest of the depositors and stockholders of such bank, the statute authorizes the Bank Commissioner to sell such property upon the proper orders of the court.

Upon the purchase of such property the purchaser is entitled to his muniments of title.

We, therefore, hold that the State Bank Commissioner, after the district court had made its order in compliance with the statutes of our state relating to the sale of real property, has full and complete authority to convey, by deed. title to such real estate belonging to the insolvent state bank.

Judgment affirmed.

BRANSON. C. J.. MASON, V. C. J., and PHELPS, HUNT, CLARK, and RILEY, JJ, concur.

Note.—See 7 C. J. p. 482, §12 (Anno).